## BLESER v. BALDWIN.

(Circuit Court of Appeals, Seventh Circuit.   April 23, 1912.)

### No. 1,847.

1. Patents (§ 328*)—Validity and Infringement—Acetylene Gas Gener-
   ating Lamp.

   The Baldwin patent, No. 656,874, for an acetylene gas generating lamp,
   was not anticipated and discloses invention, but in view of the prior art
   is not entitled to a broad construction with reference to equivalents.
   Claim 1 *held* infringed by the lamp of the Bleser patent, No. 949,349, and
   claims 2, 3, 4, 5, 6, and 10 not infringed.

2. Patents (§ 328*)—Validity and Infringement—Acetylene Gas Gener-
   ating Lamp.

   The Baldwin patent, No. 821,580, for an improvement in acetylene gas
   generating lamps, *held* valid, but not infringed.

Appeal from the Circuit Court of the United States for the South-
ern District of Illinois.

Suit in equity by Frederick E. Baldwin against Jacob Bleser. De-
cree for complainant, and defendant appeals. Affirmed in part, and
reversed in part.

Appellee was granted two patents for improvements in acetylene gas gen-
erating lamps. The prior one was granted August 28, 1900, as number
656,874, and the other was granted May 22, 1906, and numbered 821,580.
This suit was instituted to restrain infringement of claims 1, 2, 3, 4, 5, 6, and
10, of the first-named patent, and claims 1 and 4 of the second-named patent,
on January 21, 1909. The answer sets up the usual defenses of want of
validity and noninfringement. In a general way, both patents cover devices
having, (1) a water reservoir located above; (2) a receptacle for containing
calcium carbide; (3) a tube leading from the former down into either direct
or indirect co-operation with the contents of the latter, and distributing
water thereto; (4) a valve controlling the flow of water from the reservoir
to the calcium carbide chamber through said tube; and (5) a rotatable stem
extending outside the reservoir so as to form a handle, and extending down-
ward to and carrying the valve, and then passing on down through, and
some distance below the connecting tube. In both, the flow of water is regu-
lated by the pressure of the gas generated in the calcium carbide chamber,
acting upon the column of water in the tube, and by the valve arrangement.

In the first-named patent the stem serves (1) to rotate the valve into and
out of the seat, and (2) to clear the inside of the tube from obstructing ac-
cretions. The latter is accomplished by bending the wire which acts as a
spring core, and serves to steady the valve in the device of claims 2, 3, 4, 5,
6, and 10, of the first patent, and claims 1 and 4 of the second patent, and
by the piston-like action of the stem of claim 1. Claim 10 of the first patent
pertains only to the manner of adjusting gas generation to the requirements
of the lamp.

In the second patent, the stem protruding below the bottom of the tube
is lengthened and bent at an angle so as to stir up the calcium carbide, which
has a tendency to clog and cake about the tube opening. Each device pro-
vides for a burner. The tube and stem in the first patent in suit have only
indirect contact with the carbide body, since these extend into a vertical
foraminous tube resting upon and rising from the floor of the carbide cham-
ber. This tube holds the carbide away from the end of the tube and stem.
In the latter patent, these ends are not protected from, but extend well into

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the mass of carbide. The construction and operation of the devices of the patents in suit, so far as here involved, will be readily understood from the drawings here produced.

It will be noticed that the protruding end of the stem, below the tube $C$ in the carbide chamber is pointed. This, the patent asserts, secures the delivery of the water to the carbide in small drops or particles. An excess of water supplied to the carbide results in an excess of gas, which, in turn, stops the flow of water through the tube. The valve is manually adjusted, so that, otherwise than as above stated, there is no automatic adjustment of the water supply. The water pressure is determined by the height of the water column in the tube and tank. When the gas pressure exceeds the water pressure, there may be said to be an excess of gas pressure, and the supply of water will be resisted. It is therefore evident that the required pressure must be adjusted to meet the volume of gas required by any given burner. Some of these, of course, will consume more gas than others. In order to meet these varying conditions, the required pressure must be ascertained.

"In constructing my lamps," says the patent, "after deciding on the special form of burner to be used and determining that pressure of gas, with which it burns best, I make the water tube of such length that the mean height of the water in the reservoir, added to the length of the tube, will afford a pressure approximately equal to that which the lamp requires. The result will be that should the pressure in the gas chamber become too great, the supply of water will be automatically shut off, but as soon as the pressure in the gas chamber becomes normal or less, the water will drop slowly or rapidly as may be required."

Appellant cites three patents in the prior art, viz.: Patent No. 591,132, granted to Handshy, October 5, 1897, for an acetylene gas lamp; patent

No. 638,449, granted to Dolan, December 5, 1899, for an acetylene gas generating lamp; and patent No. 644,910 to Hallows and Tucker, on March 6, 1900, for a like lamp.

The first-named patent calls for a water chamber, a storage or pressure chamber, and a carbide chamber. The partition floor between the two latter is a perforated diaphragm, and that between the first two is a flexible diaphragm. The valve which controls the flow of water into the tube which supplies water to the carbide rests upon a valve stem which is fastened to the floor of the carbide chamber. The water tube through which the valve stem extends, depends from the flexible diaphragm or floor of the water receptacle, in which also is located the valve seat, into the carbide body. The valve stem, the patent says, may be secured to the perforated diaphragm which separates the gas chamber from the carbide chamber, or it may be secured to the top cover of the water receptacle. It is intended to be rigid in any case. To close it, the flexible floor of the water tank must be lifted to contact with it by the gas pressure in the gas tank or chamber. There seems to be no reason why the flow of water through the water tube would not also be stopped by the gas pressure whenever it became excessive, just as in the patent in suit. That it could ever become excessive seems doubtful, since the pressure of the gas would operate to close the valve long before it would affect the water in the tube, because the weight or pressure of the water in the water chamber would be only a fraction of that obtaining at the bottom of the water tube in the carbide chamber. The valve stem is incapable of being rotated to clear the inner walls of the tube or agitate the carbide. The Dolan patent covers a flexible diaphragm, as in Handshy. The valve is carried by a fixed stem attached rigidly to a rod which depends from a nut located in the flexible diaphragm which is placed above the water chamber. The excess gas is conducted to the space between the water chamber and the valve carrying diaphragm. This latter being lifted by gas pressure closes the valve and cuts off the water supply. The carbide chamber is rotated at intervals to free the carbide from the lime and other accumulations. When the pressure of gas is removed, the diaphragm is released and the valve is dropped from its rest.

The patent to Hallows and Tucker has the water and carbide chambers. The water is conducted through tubes or a water jacket paralleling the sides of the two chambers, and next thereto down under the floor of the carbide chamber, and thence to the tube rising from that floor to the top of the carbide body, the entrance to which is controlled by a plug or valve operated by a revoluble stem which terminates at the top of the lamp in a milled nut. When the plug or valve is rotated out of its seat, the water ascends the tube and overflows into the carbide. There is no provision made for the cessation of the generation of gas, though it is not apparent why the gas pressure would not stay the upward flow of the water in the tube. According to the specification, when the pressure of gas is excessive, the gas escapes through the water supply tubes or jacket at the side of the chambers, passing up to the water chamber, and thence out into the atmosphere.

Owing to the arrangement, there seems to be no need of a tube cleaner, though the rotatable tube is shown in the supply tube in the carbide chamber: its only suggested use being the operation of the water supply plug or valve.

Appellant's device is substantially that of patent No. 949,349, granted to him February 15, 1910, for an acetylene gas generator lamp, and is shown in figure 2 of that patent, so far as essential on this hearing. It has the water and carbide chambers, the water supply tube governed by a valve carried by a stem having a central bore through which passes a needle—both separately operated by external handles. In the patent in suit, the needle is called the valve stem. Here the hollow tube carries the valve, which is rotated into and out of its seat at the bottom of the water chamber when desired. The needle is said to fit the bore in the valve stem, also the opening through the valve body and the feed tube loosely, extending slightly below the latter. It is designed to be slid up and down so as to clean the bore. The bottom of the water supply tube enters the carbide mass, carrying the needle point somewhat in advance of it. The water passes along the needle

through the valve stem and is delivered to the carbide from the needle point, as in the patent in suit. In case of excessive generation of gas, the flow of the water is regulated by the back pressure of the gas upon the column of water in the tube, as in appellee's device.

The following drawing fairly discloses appellant's lamp:

On the hearing before the Circuit Court, the prayer of the bill was granted, defendant was enjoined from further infringing the patents in suit, an accounting was ordered, and judgment for costs decreed against appellant. The cause is now before the court on appeal from that order. The errors assigned are that the court erred in holding that each and all of the claims in suit were valid; that appellant infringed each of them; and in entering a decree in favor of appellee and refusing to enter a decree in favor of appellant. Further facts are stated in the opinion.

A. H. Adams, C. E. Pickard, J. L. Jackson, and A. M. Fitzgerald, for appellant.

M. B. Philipp and James Q. Rice, for appellee.

Before KOHLSAAT and MACK, Circuit Judges, and SANBORN, District Judge.

KOHLSAAT, Circuit Judge (after stating the facts as above).  [1] It was not new in acetylene gas lamps to so adjust the pipe and needle or stem running therethrough as that the latter should move automatically up and down within the pipe, and thereby clear it from accumulations. This was attained in the Handshy patent, where the pipe moved up and down the stem, being the reverse of the movement of the stem and pipe in suit.

It was new to claim the regulation of water supply by means of gas pressure upon the column of water in the water supply tube. No reason is perceived, however, why the same result could not have been

attained in the Handshy and Hallows and Tucker patents, were these patents not provided with easier means for relief from excessive pressure. It was also new to secure more complete scouring of the inner walls of the water supply tube near its lower end, by bending the needle or stem therewithin, so as to give it stiff resilient bearing against the inner wall of the tube, and at the same time securing steadiness of the valve, in case of jolting or rough handling. None of the patents of the prior art disclose a stem protruding from the bore in the lower end of the water supply pipe. The patent claims for this a better method of distributing or delivering the water to the carbide. It sets out that the water should be delivered in small drops or particles and asserts that this result follows the use of a sharp pointed stem.

Inasmuch as the water supply pipe in the first patent in suit delivers the water into what is called a foraminous tube, through the meshes of which the water passes to the carbide, the advantage of this feature does not seem considerable. This patent has many other elements, but the foregoing are deemed sufficient for the purposes of this suit. Taking into consideration the features above mentioned, the somewhat novel arrangement of the parts, and the presumption arising from the grant, we deem the validity of the patent duly established, qualified, however, by the disclosures of the prior art as above set out. It is evident, however, that it covers no wide field of invention and is not entitled to a broad construction with reference to equivalents. The second patent in suit is for alleged improvements upon the first.

[2] As above stated, these consist in its means for agitating the carbide, and the location of the lower end of the water tube and protruding stem within the carbide mass. The former has some merit of a modest kind. It is new and useful, and, in our judgment, entitled to recognition as involving some inventive thought. The latter is found in Handshy. As to the tube: even were this arrangement thereof not found in the prior art, it falls short of invention. Without it, the other feature is valueless. It is obviously the only thing to do, where it is sought to stir up the packed carbide or carbide refuse by the use of a stem projecting from the end of the tube. Some claim is made that appellant's device discloses a stem, bent near its lower end to operate as appellee's does. This is strenuously controverted by appellant.

An inspection of Exhibit D, being one of appellant's lamps, alleged to disclose a bent stem, satisfies us that the stem is not bent. The Bleser patent does not call for it, and the proofs do not justify such a finding. Evidently, the tube is imperfect, its wall not being uniform in thickness around its perimeter, thus throwing the needle slightly out of true; but the evidence fails to show that there was any intention to bend it, nor does there appear to have been any advantage in doing so. We do not deem the position of appellee in regard to its being bent well taken. It follows that appellant does not infringe the second patent in suit, and as to that the bill is dismissed for want of equity. Since appellant's needle or stem is so constructed as not to bear frictionally against the inner walls of the water supply tube, it is not the stem of claims 2, 3, 4, 5, and 6 of the first patent in suit.

Claims 2 and 6 set out that the bent stem will prevent rotation of the valve stem. Claim 4 functions the stem to prevent rotation of the valve itself, while claims 2 and 5 ascribe to the stem the function of keeping the inner walls of the water supply tube clean—all operated by a plug which may be manipulated from outside the lamp. The subject-matter of claim 10, which seeks to graduate the height of the water column to the requirements of the burner, was anticipated in the Hallows and Tucker patent, so far as need be here considered. There is no evidence that appellant has appropriated it. Therefore none of these claims are deemed to have been infringed by appellant. Appellant's needle, which in some respects corresponds to appellee's bent stem, differs from it in that it does not carry the valve, is not bent, does not operate as a brake, and may be moved up and down, and, as seems apparent, rotated without interfering with the water supply tube or any other element of his combination.

The Bleser patent calls for a needle fitting loosely into the tube and other hollow parts of which it constitutes the core. Its function is "to clean the tube 4 and remove any obstruction from the end thereof." It is clearly the stem of claim 1 of the patent in suit, save for the fact that it does not carry the valve member. In other respects its mission is the same as that of the stem of claim 1, which claim calls in part, for "a plug closing and opening into the reservoir, a stem carried by the plug and extending through the reservoir and water tube, and a valve secured to or carried by the stem and controlling the passage from the reservoir into the said tube, as set forth." With regard to appellant's lamp, as a complete device, it appears that it has a plug closing and opening into the reservoir by means of a series of parts through which the needle extends, a valve secured to or carried by those parts arranged to operate as a tube, which valve controls the passage from the reservoir into the water supply tube, and a needle extending through and beyond the tube, like that of claim 1. Those correlated parts, constituting a tube, as above stated, and carrying the valve, together with the needle, are the equivalent of appellee's stem considering them as an equivalent, and taking into account the identity of functions of appellee's stem and appellant's needle from the valve down through and beyond the water supply tube, we have an appropriation of appellee's device by appellant down to that point, wanting only the pointed stem or needle, which appellee claims enhances the efficiency of his device. As in Handshy, so in the appellant's device, the lower end of the water supply tube contacts with the carbide mass, therefore the need of the movable needle to agitate the mass, as well as clear the tube. Does the extension of the needle through the water supply tube at the place of contact with the carbide mass alter the case? This feature is shown only in the device of the second patent in suit, but there the needle or stem protrudes from the tube at considerable length, and substantially at a right angle to the tube. This has been held above not to be infringed by appellant. Nor would the extension of the tube and stem of claim 1 to absolute contact with the carbide mass change the character of the device of that claim. To all intents and purposes it is in contact with that mass.

The intervention of the foraminous tube N, avoids the need for using the stem to agitate the carbide. If, however, it should become necessary, it is fully adapted to that end. The difference between the two is not deemed important enough to constitute an essential element of the combination of claim 1. This, taken together with the fact that appellant regulates the flow of water by gas pressure, a method not disclosed in the prior art, leads to the conclusion that his device is but an unsuccessful attempt to evade appellee's conception as shown in claim 1 of the first patent in suit. This claim presents the minimum of patentable novelty, but we deem that little entitled to the protection of the statute, and therefore hold it valid and infringed. As to claims 2, 3, 4, 5, 6, and 10, of patent No. 656,874, and claims 1 and 4 of patent No. 821,580, the decree appealed from is reversed and remanded with direction to the Circuit Court to dismiss the bill for want of equity as to said claims. The order appealed from decreeing validity and infringement of said claim 1 of said first-named patent is affirmed.